# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3496

_____

James Lee Gaines,                        *
                                         *
         Plaintiff/Appellee,             *
                                         *
    v.                                   *
                                         *
Kathleen Brewer, Deputy, Individually    *
and in her official capacity as a Deputy *
Sheriff of the Pulaski County Sheriff's  *   Appeal from the United States
Office of Pulaski County, Arkansas;      *   District Court for the Eastern
                                         *   District of Arkansas.
         Defendant/Appellant,            *
                                         *        [UNPUBLISHED]
Charles Calvin Vereen, Jr.,              *
individually and in his capacity as an   *
actor in Concert with a Deputy Sheriff   *
of Pulaski County, Arkansas and as a     *
patrolman for the North Little Rock      *
Arkansas Police Department,              *
                                         *
         Defendant.                      *

_____

Submitted: April 15, 2005
    Filed:  May 9, 2005

_____

Before LOKEN, Chief Judge, FAGG and BYE, Circuit Judges.

_____

PER CURIAM.

Police officer Calvin Vereen called the Pulaski County Sheriff's Office stating he had an encounter with a pit bull while jogging. Deputy Kathleen Brewer went to Vereen's house to take a report. Vereen told Brewer a dog at a certain location had growled, barked, ran, and jumped at him, and chased him across a road and trapped him against a fence. According to Vereen, the owner stood by, watched, and did nothing for several minutes, then took control of the dog. Brewer went to the encounter's location with Vereen to speak with the dog's owner about the county ordinance relating to vicious animals. Deputy Brewer went to the door of the owner's home, knocked, and identified herself as a police officer. Vereen stood outside the patrol car in plain clothes. Jamie Lee Gaines cracked the door, which opened inward. It was dark outside, but the porch light was on. As Gaines opened the door, his Chesapeake Retriever named Buddy bolted out of the house. Buddy brushed by Brewer, allegedly scratching her arm with his claws, teeth, or collar, and went into the yard, where he ran in circles and barked. Gaines followed Buddy, and Brewer started shooting at the dog. Vereen jumped into the bed of Gaines's pickup truck, then went to Brewer's patrol car, grabbed a shotgun, and pointed it at Buddy and Gaines. Gaines's neighbor came outside and yelled at the officers not to shoot because of the neighborhood. After Gaines grabbed Buddy and placed him in his kennel in the back yard, Brewer and Vereen arrested Gaines for aggravated assault and second-degree battery based on the Buddy's encounter with her at the door. The charges were dismissed without prosecution.

Gaines filed this 42 U.S.C. § 1983 action alleging Brewer and Vereen had arrested him without probable cause. The district court[*] denied Brewer's motion for summary judgment based on qualified immunity concluding there were disputed facts. Brewer appeals, and we affirm.

---

[*]The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

Summary judgment is appropriate only if the record, viewed in the light most favorable to Gaines, shows that there is no genuine issue of material fact about the qualified immunity defense and that Brewer is entitled to judgment as a matter of law. Dixon v. Lowery, 302 F.3d 857, 861 (8th Cir. 2002); Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000). When a defendant raises the qualified immunity defense, the court must first decide whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). If so, the court then considers whether that right was so clearly established that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "'It is well-established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments.'" Anderson v. Cass County, 367 F.3d 741, 745 (8th Cir. 2004). "Probable cause exists if 'the totality of facts based on reasonably trustworthy information would justify a prudent person in believing the individual arrested had committed . . . an offense' at the time of the arrest." Smithson, 235 F.3d at 1062. Thus, officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so, as long as the belief is objectively reasonable. Id.

Viewing the evidence in the light most favorable to Gaines, we conclude a reasonable officer in Brewer's position could not reasonably believe there was probable cause to arrest Gaines. Many of the facts involving Buddy's encounter with Brewer are disputed, and at the summary judgment stage, we must assume Gaines's version is true. We disagree with Brewer's contention that a reasonable officer in her position would have believed she had probable cause to arrest Gaines for assault in the second and third degrees, see Ark. Code Ann. §§ 5-13-206 & 207, and battery in the third degree, see id. § 5-13-203. A reasonable officer in Brewer's position could not reasonably believe Gaines had recklessly engaged in conduct creating a substantial risk of physical injury to another, id. § 5-13-206, purposely created

-3-

apprehension of imminent physical injury in another, id. § 5-13-207, or recklessly caused physical injury to another, id. § 5-13-203. It is undisputed that Gaines never ordered Buddy to attack Brewer or Vereen, or did anything to encourage him to do so. Under the circumstances, a reasonable officer in Brewer's position could not reasonably perceive Gaines intentionally or reckless let Buddy loose.

In her reply brief, Brewer argues a reasonable officer in her position could reasonably believe Gaines had violated the county ordinance for owning a dog that attacks a person causing bodily harm. See Devenpeck v. Alford, 125 S. Ct. 588, 591, 594 (2004) (holding arrest is lawful even if offense for which there is probable cause to arrest is not closely related to the offense stated by the arresting officer). We disagree. Considering the facts in the light most favorable to Gaines, we must assume Buddy simply scratched Gaines's arm as he brushed past her while running from the house into the yard. Indeed, Brewer does not allege Buddy bit her, but that he leapt at her with his mouth open and hit her on the elbow, resulting in scratches. Gaines stated he could see how Buddy could have scratched Brewer with his collar, a claw, or anything, but Gaines denied that Buddy bit Brewer. Under the circumstances, no reasonable officer in Gaines's position could reasonably believe Buddy had "attack[ed]" her or engaged in vicious behavior within the meaning of the county ordinance.

We thus affirm the district court's denial of qualified immunity for Brewer.

LOKEN, Chief Judge, dissenting.

I respectfully dissent. Section 3.26(g) of the Pulaski County Ordinances states in relevant part:

> Any person who owns . . . or possesses a dog that attacks a person causing harm to property or body . . . shall be guilty of a violation. . . .

> Any person convicted of violating this section shall be fined not more than five hundred dollars ($500.00).

Deputy Brewer went to Gaines's home to investigate a complaint that his dog had attacked a citizen earlier that day. Brewer knocked and identified herself. When Gaines opened the door, the dog rushed past Gaines and, as Brewer told Gaines at the time, appeared to bite Brewer. It is undisputed that Brewer suffered a cut elbow, which was later cleaned and dressed at a local emergency room. Brewer showed Gaines the wound. He only questions whether it was caused by Buddy's teeth or by his collar. Thus, Brewer had cause to believe that Gaines had violated § 3.26(g) by possessing a dog that attacked a person (herself), "causing harm to . . . body."

Under Arkansas law, Deputy Brewer as a law enforcement officer was authorized to "arrest a person without a warrant if . . . the officer has reasonable cause to believe that such person has committed any violation of law in the officer's presence." Ark. R. Crim. P. 4.1(a)(iii); see Ark. Code Ann. § 16-81-106(b)(2)(A) (any "public offense"). The Fourth Amendment is not violated by a warrantless arrest if "an officer has probable cause to believe that an individual has committed *even a very minor criminal offense in his presence*." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (emphasis added); see Michigan v. DeFillippo, 443 U.S. 31, 36-37 (1979). Moreover, the arrest is constitutionally valid even if the offense for which there was probable cause is not closely related to the offense stated by the arresting officer at the time of the arrest. Devenpeck v. Alford, 125 S. Ct. 588, 594 (2004).

These authorities establish that Deputy Brewer is entitled to summary judgment on the *merits* of Gaines's Fourth Amendment claim. Thus, it should be a foregone conclusion that Brewer is entitled to qualified immunity, for which the governing standard "is not probable cause in fact but arguable probable cause . . . that is, whether the officer should have known that the arrest violated plaintiff's clearly established right." Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996)

(quotation omitted). Unfortunately, the district court and now this court have been distracted by irrelevant disputes over what happened before and after Buddy injured Deputy Brewer. These questions might be relevant to whether Brewer had probable cause to arrest Gaines for assault and battery. They are irrelevant to whether Brewer had arguable probable cause to arrest Gaines for a violation of § 3.26(g).

It violates the basic principles of qualified immunity that Deputy Brewer must defend this damage action by a citizen whose dog, perhaps non-maliciously, attacked two law enforcement officers in one day. Hopefully, the district court will now focus on the significance of § 3.26(g) and the Supreme Court's intervening decision in Devenpeck v. Alford and will grant Brewer the summary judgment she deserves.

_____